[No. 6182. Decided June 22, 1906.]

M. E. REILLY et al., Appellants, v. PETER GOTTLEB et al., Respondents.[1]

VENDOR AND PURCHASER—FRAUD—EVIDENCE—APPEAL AND ERROR— REVIEW—FINDINGS. Findings of fact based upon the uncorroborated testimony of the vendor of land, as to representations made by the vendor at the time of sale, will be reversed on appeal, where there is directly contradictory testimony of the vendee, corroborated in all particulars by two disinterested witnesses who heard the conversation.

VENDOR AND PURCHASER—MISREPRESENTATIONS—OPINIONS—QUAL- ITY—RESCISSION BY VENDEE. Representations by a vendor that this land was good farming land in Pecos valley, within three miles of the city of F. with water and farms in the vicinity, when in fact it was arid land, not in any valley and fifty miles from said city, and no farms near it, are not matters of opinion when the vendor had seen and knew the land; and when relied upon by a purchaser, never having seen the land, which was two hundred and fifty miles distant, the parties do not stand upon an equal footing and the purchaser is entitled to a rescission of the sale on the ground of fraud and false representations.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered December 28, 1905, upon findings in favor of the defendants, after a trial on the merits before the court without a jury in an action for the rescission of a sale of land. Reversed.

[1]Reported in 85 Pac. 675.

*Boyle & Warburton,* for appellants.
*Ellis & Fletcher,* for respondents.

DUNBAR, J.—This action was brought to set aside a conveyance of certain lots in the city of Tacoma, which appellants allege were secured by fraudulent representation on the part of the respondents. The court refused to grant the relief prayed for. According to the allegations of the complaint and the testimony of the respondent, in January, 1905, the appellant Reilly and respondent Gottleb met in El Paso, Texas, at the office of a real estate firm where appellant had gone to inquire for purchasable land in Texas, and where the respondent had gone to list his property for sale or exchange. The respondent was introduced to the appellant by the manager of the real estate firm, and during the conversation which ensued it was ascertained that the respondent had 158 acres of land in Texas and that the appellant owned certain lots in the city of Tacoma. An exchange was effected, the appellant receiving a deed to the Texas land and the respondent a deed to the lots in Tacoma.

The appellant testified that the respondent represented to him, that the land which he owned was in the Pecos valley, the very best land in the country, and within three miles of Fort Stockton; that it was good for farming and for anything; that he could stand on the land and see right up the main street in Fort Stockton; that there was a good traveled road right by his land and running into, and up, the main street in Fort Stockton; that there was plenty of water, and a person could dig a well and get water, and plenty of it, within twenty feet of the top; that the respondent asked the appellant at different times if the land was upon top of the ridge, and he said no; that it was the very best river bottom land; that the land was worth $30 per acre, but, being hard pressed for money, he would make the price $15 per acre, considering that he was not a farmer; that he was acquainted with the land, having made two trips to it, and in addition

to its being good farm land, it was fine land for vineyards and fruits; that, relying upon these representations, the appellant traded his lots in Tacoma for said land and conveyed the said Tacoma lots to the respondent; that, after he closed the transaction, he investigated the land which he had traded for and found that, instead of being within three miles of Fort Stockton, it was about fifty miles from that place; that, instead of being in the Pecos valley, it was on an arid ridge; that there was no water on it, and that water could not be obtained without going to a depth of from three to four hundred feet; that it was not farming land at all, but a poor class of arid grazing land; and that, instead of being worth from $15 to $30 an acre, the highest price that it could be sold for, if sold at all, was about 60 cents per acre. Appellant testified that the Tacoma property which he had deeded to respondent was worth $1,000. He executed a deed to the respondent for the Texas land and tendered it in court for his benefit.

The respondent testified, in substance, that he met the appellant substantially as testified to by appellant; that he had bought this Texas land some time before, giving therefor two horses, a carriage, and harness, without having seen it, but that he afterwards had seen it once, or had seen what was represented to be his land; that the real estate man in El Paso, Mr. Millican, had told him that the land ought to be worth $1,500 (this was the man that had introduced appellant and respondent to each other); denies that he made the representations to the appellant as alleged by appellant, but on the other hand, that he gave appellant $30 to go down and look at the land for himself and if it were not satisfactory to him he need not pay him back, but if it were and they made the trade, then appellant was to stand half of that expense; that appellant said "All right" and took the $30; that about ten days after this, he met appellant in the park and asked him if he had been down to see the land; that appellant said no; but that he had found out all about it from a man who

lived near it, and who knew more about it than respondent did, and that, after some further talk, the trade was made and the deeds executed; and that appellant relied upon information which he had obtained outside of respondent's representations, which information appellant claimed to be satisfied with. If the testimony of the respondent could be believed, it is evident that the judgment of the court should be affirmed, and that the appellant failed to substantiate the allegations of the complaint that the sale was made through fraud and misrepresentation. But in view of the other testimony in this case from disinterested witnesses, we are not able to adopt the statement of the respondent as the truth of the matter.

R. L. Mellon, who was employed in the real estate office, testified, that he was present at the time the alleged representations were made, and, when the respondent came to the office to list the Texas property, that the respondent described his property as 158 acres of good farming land in Pecos valley, about three miles from Fort Stockton, with water within thirty feet of the surface for irrigating, all good rich valley farm land; and that he had heard several conversations between respondent and appellant when the respondent had told appellant that it was all good land, all in the valley, no waste land, no rocks nor rough land, water supply abundant for irrigating, about two and a half to three miles from Fort Stockton, that adjoining lands raised good crops, a vineyard near by; that there was a public road running into Fort Stockton; and that he had seen the land, and had gone over it; and also testified that the appellant made the trade on respondent's representations.

W. O. Millican, who was the proprietor of the real estate office, testified that he was present during the conversations above alluded to, and introduced the appellant and the respondent; that respondent described his property as being in Pecos valley and about three miles from Fort Stockton, and that its value was $15 per acre.

W. A. Hadden, county and district clerk of Pecos county, testified that his records described the land as dry grazing land, and that the official county map shows the land to be fifty miles from Fort Stockton, not situated near any village or market place, and that it could not be seen from Fort Stockton.

J. W. Thornberry, the state quarantine inspector at Fort Stockton, testified that it was not agricultural land but grazing land, and not the best grazing land; that the nearest settlement was Longfellow, a railroad station ten miles away, at which there was a station house, section house, and two residences; that the nearest town was Sanderson, of about seven hundred inhabitants, and twenty miles away; that there was no surface water on this land, or a large body of adjacent land uniform in character, and that you had to go down some three or four hundred feet to get water; and that the land was worth about fifty cents an acre.

The testimony of all of the appellant's witnesses was taken in the form of depositions, and it does not appear that the claim of the respondent that he furnished the appellant money to defray the expenses of an examination of the land as testified to by the respondent was brought to the attention of the appellant when his deposition was taken, and he was not notified by the answer that any such claim would be made. The respondent's testimony was given orally, of course, after the testimony of the appellant had been offered, and when there was no opportunity to deny the statements made by the respondent in regard to this alleged transaction; and, in consideration of this fact and of the further fact that the testimony of the witnesses Millican and Mellon, both disinterested witnesses, supported all the material averments and testimony of the appellant, we are satisfied that the respresentations as alleged by the appellant were actually made, and that the trade was made by the appellant in reliance upon such representation.

It is true that this court, in common with other courts, has

frequently decided that representations which are mere matters of opinion are not sufficient to establish fraud or furnish ground for equitable relief. But the representations made in this case, if the testimony of the appellant and his witnesses is to be believed, were not confined to matters of opinion, but were positive statements of fact upon which the appellant relied, and inasmuch as the land was situated 250 miles away, the respondent having seen it, and the appellant never having seen it, it cannot be said that they were standing upon an equal footing when the trade was made. The representation that the land was in the Pecos valley and that it was good bottom land, when in fact it was not in the Pecos valley or in any valley at all, was not the representation of an opinion, but the statement of an alleged fact. It cannot be said that the statement that the land was but three miles from Fort Stockton and that the main street of Fort Stockton could be seen from the land, when Fort Stockton was actually fifty miles away and could not be seen from the land at all, was the expression of an opinion, but it was plain that it was a perversion of a fact and a fraudulent misrepresentation. The respondent knew that there were no farms around this land which were raising good crops, and that there were no vineyards close to it and that no stage line passed by it. These statements were simply untruths, which the respondent was guilty of announcing for the fraudulent purpose of deceiving and overreaching the appellant, and having had that effect, vitiate the transaction.

A good many cases are cited by respondent to sustain the judgment of this case, but without especially reviewing them, they will be found to be cases where the facts were so at variance with the facts in this case that they cannot be said to have any bearing upon it. We think that no case can be found decided by this, or any other court, where so flagrant a fraud has been practiced, where relief has been denied. It is contended by respondent that he has been put to some expense in repairing buildings on the Tacoma property, but we think, in-

asmuch as he has had the benefit of the rent of the property from the time he purchased, that that is a sufficient compensation for all the expenses he has been to.

The judgment will be reversed, with instructions to the lower court to grant the petition of the plaintiff.

MOUNT, C. J., CROW, ROOT, HADLEY, FULLERTON, and RUDKIN, JJ. concur.